[No. D035559. Fourth Dist., Div. One. Jan. 22, 2001.]

CITY OF SAN DIEGO, Plaintiff and Respondent, v.
MICHAEL KANE DUNKL et al., Defendants and Appellants.

[No. D035585. Fourth Dist., Div. One. Jan. 22, 2001.]

PADRES, L.P., Plaintiff and Respondent, v.
MICHAEL KANE DUNKL et al., Defendants and Appellants.

## COUNSEL

J. Bruce Henderson and Kent C. Wilson for Defendants and Appellants.

Luce, Forward, Hamilton & Scripps, Charles A. Bird; Casey G. Gwinn, City Attorney, and Leslie J. Girard, Assistant City Attorney, for Plaintiff and Respondent City of San Diego.

Gray, Cary, Ware & Freidenrich, Mark C. Zebrowski, Kathryn E. Karcher and Mary A. Lehman for Plaintiff and Respondent Padres, L.P.

## OPINION

**HUFFMAN, J.**—These two separate declaratory relief actions were brought by the City of San Diego (the City) and the limited partnership which owns the San Diego Padres professional baseball team, Padres, L.P. (the Padres) against two individuals, Michael Kane Dunkl and Philip Zoebisch (collectively referred to as the proponents), who began in November 1999 to circulate a proposed initiative which would have made certain negative findings concerning an earlier city ordinance, Proposition C (Prop. C). Prop. C was adopted by City voters in November 1998 to enable funding and construction of the downtown ballpark redevelopment project pursuant to a memorandum of understanding (MOU) between the City, its redevelopment agency, the Padres and others.

The City and the Padres sought judicial declarations that the proposed initiative, commonly known as the Ballpark Initiative (referred to here as the proposed initiative), was invalid and should not be placed on the ballot even if adequate signatures for that purpose were obtained. These actions were coordinated in the superior court and resulted in summary judgments in favor of the City and the Padres, the moving parties below. The basis of the summary judgment rulings was that the proposed initiative was invalid and should not be placed on the ballot for an upcoming election, because it sought to enact measures that were beyond the power of the voters to adopt. Specifically, the findings that the proposed initiative sought to enact were not legislative in character but rather were administrative measures properly within the domain of the City administration.

The proponents of the proposed initiative appeal the summary judgments and also the related rulings of the superior court that found their related motions to strike the complaints under Code of Civil Procedure section

425.16, the SLAPP motions,[1] must be taken off calendar as moot in view of the City's and the Padres' successful summary judgment motions. These two appeals have been consolidated in this court for oral argument and decision. The proponents argue that the trial court erred as a matter of law in characterizing the proposed initiative as failing to meet the criteria for a permissible ballot measure that was legislative in character. The proponents also argue that the rulings that the SLAPP motions were moot were erroneous and represent an impermissible chilling of their constitutional rights to petition the government for redress of grievances.

On de novo review of the summary judgments, we find that preelection review of the proposed initiative was appropriately carried out and that the superior court reached the correct legal conclusions in granting summary judgment to the City and the Padres on their requests for declaratory relief that the proposed initiative was invalid. We further conclude that the trial court correctly determined that the SLAPP motions to strike were moot once the Padres and the City prevailed on the legal questions presented for resolution in the summary judgment proceedings. It is well accepted that preelection review of ballot measures is appropriate where the validity of a proposal is in serious question, and where the matter can be resolved as a matter of law before unnecessary expenditures of time and effort have been placed into a futile election campaign. (*Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1153 [90 Cal.Rptr.2d 810, 988 P.2d 1089].) There is no constitutional right to place an invalid initiative on the ballot. (See *San Francisco Forty-Niners v. Nishioka* (1999) 75 Cal.App.4th 637, 645-648 [89 Cal.Rptr.2d 388].) That was the case here, and no inappropriate restriction of the proponents' constitutional rights occurred under these circumstances. We affirm the summary judgments and underlying rulings for the reasons explained below.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1998, the City's voters approved Prop. C by approximately a 60-40-percentage margin, authorizing the City to enter into an MOU with, in particular, the Padres.[2] Prop. C and the MOU it authorizes provide for a public-private partnership between the Padres, the City and redevelopment

---

[1] All statutory references are to this code unless otherwise stated. The acronym SLAPP has been widely adopted to describe lawsuits affecting speech or petition rights (strategic lawsuit against public participation). (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1 [81 Cal.Rptr.2d 471, 969 P.2d 564].)

[2] In full, the title of the MOU is "Memorandum Of Understanding Between The City Of San Diego, The Redevelopment Agency Of The City Of San Diego, The Centre City Development Corporation, And Padres L.P. Concerning A Ballpark District, Construction Of A Baseball Park, And A Redevelopment Project," as set forth in Prop. C.

entities to build a new major league ballpark as part of a larger redevelopment project in Centre City East in downtown San Diego (sometimes called the project). Prop. C states that its purpose and that of the MOU it authorized are to constitute legislative acts establishing policy for the City on these matters, and further to provide the ways and means to implement such policy by any necessary and appropriate administrative and nonlegislative acts that will carry out the purpose and intent of the ordinance. Prop. C also authorizes the city council to amend or modify the MOU, in the best interests of the city entities, "only if any such amendment or modifications do not materially: 1) decrease the rights or increase the obligations of the City; 2) increase the financial commitments of the City; or 3) decrease revenue to the City." The City may carry out the MOU and associated agreements if they are in the best interests of the City, with respect to the same three criteria.

Under the MOU, the redevelopment project will proceed as long as the City finds several conditions subsequent have been met. On March 31, 1999, the city council issued written findings based on testimony and other evidence that several of the conditions subsequent specifically set forth in the MOU had been satisfied. These findings recited that the City had determined it would be feasible to complete land acquisition, environmental approvals, parking facilities and infrastructure, and the Padres had made the necessary assurances regarding the private development that would be completed in association with the redevelopment and ballpark project, including a 1,000-room hotel project. However, other MOU conditions still remained to be satisfied at the times covered by this record, including the crucial requirement that the City be assured it and its redevelopment agency will be able to obtain financing for the City's $225 million investment in the ballpark on reasonably acceptable terms and on a fully tax-exempt basis.

In November 1999, the proponents published and filed with the city clerk their notice of intent to circulate the proposed initiative. After the required 20-day waiting period, the proponents began to gather voter signatures.[3] The proposed initiative as circulated has the stated purpose of determining on behalf of the City, through its voters, that as of November 2, 1999, "certain contingencies and conditions subsequent affecting obligations of the City set forth in various provisions of the MOU have failed, are unsatisfied, or are defeated by nonperformance." (Proposed initiative, § 2, subd. (a); all further references to the proposed initiative are to section and subdivision in abbreviated fashion.) The proposed initiative further states that it shall have the effect of terminating as of November 2, 1999, any contingent obligations of the City, pursuant to the related determination that the conditions subsequent

---

[3]The period for gathering signatures would have terminated on May 22, 2000, had it not been for the events of these court cases, filed January 4, 2000.

have failed. (*Id.*, § 2, subd. (b).) The proposed initiative would further have provided "that reinstatement or creation of similar obligations of the City which are terminated by this proposition shall require a two-thirds vote of the people in an election held for that purpose." (*Id.*, § 2, subd. (c).)

Other key sections of the proposed initiative are section 3, the findings and declarations section, and section 4, entitled "Exercise of City's Discretion." Section 3, subdivisions (a) and (b) express disapproval of the expenditures anticipated by the MOU and of the hotel proposal as too risky. Section 3, subdivision (c) states the intent of the voters to establish, through the proposed initiative, policy for the City and its implementation "by such administrative and non-legislative acts as may be necessary and appropriate to carry out the purpose and intent of Proposition C and the MOU." Under section 3, subdivision (d), the voters shall directly exercise the discretion of the City to implement the MOU in the best interests of the City.

Section 4 of the proposed initiative then sets forth a list of the specific conditions subsequent and contingencies that the initiative would have deemed unsatisfied or failed if not completed or waived by city council action on or before November 2, 1999, thus having the effect of terminating all obligations of the City under the MOU. These allegedly unsatisfied conditions include the City's ability to obtain financing on reasonably acceptable terms, the temporary extension of the Padres' use and occupancy at Qualcomm Stadium, the profitability of the project for purposes of generating taxes, and the obtaining of adequate financing and security for the investments. Section 4, subdivision (e) states that the adoption of the proposed initiative would establish, retroactive to November 2, 1999, such policy and implementation that would carry out the purposes and intent of the proposed initiative and the MOU.

The proposed initiative includes a severability clause, and also states that the proponents of the initiative (the individuals Dunkl and Zoebisch) shall be included among any defendants in any judicial challenge to any provision of the proposed initiative.

On January 4, 2000, about six weeks after the signature-gathering period commenced, the City and the Padres filed these declaratory relief actions, challenging the validity of the proposed initiative and also seeking injunctive relief against its continued circulation. The superior court coordinated the actions. The proponents immediately noticed special motions to strike the

complaints as SLAPP suits under section 425.16 et seq.[4] They contended that their constitutionally protected activities of petitioning the government and free speech were being jeopardized by the existence of the actions.

The City and the Padres promptly sought an order shortening time to place their summary judgment motions on calendar as companion matters. (§ 437c.) They contended that the existence of the proposed initiative was jeopardizing funding for the ballpark project, and hence prequalification review of the proposed initiative was appropriate. The trial court set the summary judgment hearing for February 28, 2000. It set the SLAPP motions for hearing on February 14, 2000, but took them under submission and ruled on all the motions at once. In its summary judgment reply papers, the City retreated from its request for an injunction, on the basis that the proponents had conceded the initiative was "dead" if found invalid by the court. The proponents evidently had no apparent intent to present a void initiative to the city clerk for certification to be placed on the ballot. The Padres also did not further pursue injunctive relief.

At the hearings on the motions, the proponents argued their motions to strike should be granted because of a potential chilling effect on the initiative process if individual proponents could be sued. They argued the city clerk would be a more appropriate defendant. They also argued that the City and the Padres were guilty of unreasonable delay or laches because they did not sue until after the end of the 20-day waiting period after the publication and filing of the notice of intent to circulate the petition. (San Diego Mun. Code (SDMC), § 27.1007, Time to Begin Circulating Initiative Petition.) The City and the Padres responded that they had acted promptly and the 20-day waiting period was meant only to ensure that the City could enact the same matter as in the proposed initiative if it desired, but there was no such desire here. They denied that any unconstitutional restraint of speech was going on; rather, the pursuit of the actions was justified due to the highly regulated nature of election activity. The Padres further argued that the content of the proposed initiative would amount to unconstitutional impairment of its contract rights, and also claimed voter fraud by the misleading nature of the proposed initiative.

[4]Section 425.16 provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (*Id.*, subd. (e).)

In ruling on the motions, the superior court declined to address the argument that the proposed initiative was illegal due to misrepresentation of its purpose or the issue of any illegal impairment of contract. The court's ruling first stated that preelection review of ballot measures, while rarely undertaken, is appropriate where the validity of the proposed measure is in serious controversy. The court focused its analysis upon section 2 of the proposed initiative, which stated its purpose to be a finding that certain contingencies and conditions subsequent affecting the obligations of the City as set forth in the MOU had failed, were unsatisfied, or were defeated by nonperformance. The court stated that the factual findings contained in the proposed initiative, which purported to carry out the purpose and intent of Prop. C and the MOU and to exercise the City's discretion as allowed by the MOU, would actually be findings such as those that are typically made by a governing entity in an administrative decision. The court found such fact-finding in an initiative to be impermissible, and ruled that the proposed initiative made only administrative decisions that would have undermined a measure previously adopted by the voters. The court then stated that in light of its rulings, the SLAPP motions were moot.

Summary judgments were entered in favor of the City and the Padres. These timely appeals followed and have been consolidated by stipulation for oral argument and decision in this court. (§§ 904.1, subd. (a)(1), 425.16, subd. (j).) Immediately after filing their notices of appeal, the proponents brought writ petitions in this court to challenge the denial of or refusal to rule on the SLAPP motions. The petitions were summarily denied.

DISCUSSION

I

*Issues Presented*

Both the summary judgments and the underlying SLAPP rulings are on review in this matter. The City and the Padres regard the summary judgments as dispositive, while the proponents of the proposed initiative contend that the SLAPP issues are the real key to this case and should not have been ruled to be moot due to the summary judgments' issuance. All the issues are closely interrelated. Under the procedural mechanism set out by the SLAPP statute, section 425.16, subdivision (b)(1), the court may strike a cause of action against a person that fits within the SLAPP parameters (as arising from any act of that person in furtherance of the person's constitutional right of petition or free speech in connection with a public issue) "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

■ Where, as here, the plaintiffs' declaratory relief actions present purely legal questions about the validity of the subject matter of the lawsuits, by way of a challenge to a proposed ballot measure, the SLAPP issue of whether the plaintiffs are more probably than not going to prevail in their actions may appropriately be determined by the use of related summary judgment proceedings. (§§ 425.16, subd. (b)(1), 437c.) The question here is not whether the defendant proponents are likely to prevail in their defense of the measure. Under the SLAPP statute, the question is whether the plaintiffs who are challenging the ballot measure are likely to prevail at trial or at pretrial motion proceedings.

Accordingly, within the SLAPP framework, the trial court did not err in addressing the summary judgment issues first to determine whether the plaintiffs City and the Padres were likely to prevail in their challenge. (§ 425.16, subd. (b)(1).) However, here, as in the trial court, due to the intertwined nature of the pending motions, it is necessary to consider the procedural questions raised in connection with both the SLAPP and summary judgment motions simultaneously, before drawing any final conclusions. We do so below.

■ First, however, we reiterate the well-established nature of the rule that it is proper to conduct preelection review of a claim that a proposed measure may not properly be submitted to the voters because, for example, the measure is not appropriately legislative in character. (*Senate of the State of Cal. v. Jones, supra,* 21 Cal.4th 1142, 1153, citing *American Federation of Labor v. Eu* (1984) 36 Cal.3d 687, 695-697 [206 Cal.Rptr. 89, 686 P.2d 609], which granted preelection relief when an initiative measure violated a federal constitutional provision and also exceeded the scope of the initiative power.)

In light of this rule, and because only legal questions are presented on an undisputed set of facts giving rise to the summary judgment motions, we may properly proceed to examine the procedural and substantive issues raised with respect to the validity of the proposed initiative. There is no threat to the proponents' constitutional rights under the First Amendment or the California Constitution in this process, because where there is a legitimate question raised about the power of the voters to adopt a proposed initiative, the Supreme Court has stated there is no value "in putting before the people a measure which they have no power to enact." (*American Federation of Labor v. Eu, supra,* 36 Cal.3d at p. 697.) Rather, "[t]he presence of an invalid measure on the ballot steals attention, time and money from the numerous valid propositions on the same ballot. It will confuse some voters and frustrate others, and an ultimate decision that the measure is

invalid, coming after the voters have voted in favor of the measure, tends to denigrate the legitimate use of the initiative procedure." (*Ibid.*; see also *Citizens for Responsible Behavior v. Superior Court* (1991) 1 Cal.App.4th 1013, 1021-1024 [2 Cal.Rptr.2d 648].) Accordingly, before the SLAPP issues can be finally determined, the facial validity of the proposed initiative must be resolved.

## II

### Summary Judgment and Related SLAPP Issues

█ "In evaluating the propriety of a grant of summary judgment our review is de novo, and we independently review the record before the trial court. [Citation.] In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment. [Citation.]" (*Lenane v. Continental Maritime of San Diego, Inc.* (1998) 61 Cal.App.4th 1073, 1079 [72 Cal.Rptr.2d 121].) Section 437c, subdivision (c) provides that a motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact such that the moving party is entitled to judgment as a matter of law.

Where the trial court grants summary judgment solely upon the basis of its interpretation of statutory and case law, "[i]t is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law [citation] which is subject to de novo review on appeal. [Citation.]" (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951-952 [268 Cal.Rptr. 624].) In such a case, the appellate court is not bound by the trial court's interpretation. (*Ibid.*; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

Our first task will be to focus upon the preliminary procedural issues raised by appellants in their challenges to both the summary judgments and the underlying SLAPP rulings. We shall then turn to the substantive arguments about the validity of the proposed initiative, and finally return to the SLAPP rulings.

## A

### Procedural Issues

█ In attacking both the summary judgments and the SLAPP rulings, the proponents argue they were not properly named defendants in the action, and

the city clerk would have been a more appropriate and a more traditional defendant to have been named, based on other election challenge cases. (See, e.g., *Senate of the State of Cal. v. Jones, supra*, 21 Cal.4th 1142; *San Francisco Forty-Niners v. Nishioka, supra,* 75 Cal.App.4th 637.) The proponents base this argument both on traditional constitutional protections of the right to petition the government for redress, and on their reading of the SDMC. Neither of these arguments is well taken. First, their citation to *City of Long Beach v. Bozek* (1982) 31 Cal.3d 527, 532 [183 Cal.Rptr. 86, 645 P.2d 137] (*Bozek*) is inapposite. That case dealt with whether governmental entities may sue private citizens for malicious prosecution. In holding this is not permissible, the Supreme Court discussed the paramount importance of protecting the constitutionally guaranteed right to petition the government for the redress of legitimate grievances. (*Ibid.*, citing U.S. Const., 1st Amend.; Cal. Const., art. I, § 3.) The court also noted there were other available remedies for governmental entities to regain costs and expenses expended in defending baseless claims. (*Bozek, supra,* 31 Cal.3d at p. 538.) Nothing in *Bozek* prevents a public or private entity from seeking, in an otherwise authorized action, a judicial declaration of the invalidity of a proposed ballot measure, even where private citizens are the proponents of same.

Nor is the proponents' citation to *Smith v. Silvey* (1983) 149 Cal.App.3d 400, 406-408 [197 Cal.Rptr. 15] well taken. That case determined an injunction could not issue under section 527.6 where its effect was to prevent the person enjoined from contacting government agencies, and also interfered with his exercise of his rights to free speech and to petition for redress of grievances. This case is distinguishable because no injunctive relief was issued here and it was within the power of the court to consider the declaratory relief requests in ruling on these preelection challenges of ballot measures. Election procedure is a highly regulated area and does not constitute pure expressive speech, which must be afforded a higher level of protection. (*San Francisco Forty-Niners v. Nishioka, supra,* 75 Cal.App.4th at pp. 647-648.)

The proponents also claim that the only known California case which directly granted relief against proponents of an initiative, *City of Atascadero v. Daly* (1982) 135 Cal.App.3d 466, 468 [185 Cal.Rptr. 228], should be distinguished from this case because there was a stipulation of the parties in that case that a controversy existed, by which they submitted the validity of the ordinance to determination by the trial court. The issue there was whether a proposed ordinance could properly require the city to submit any revenue-raising measure to the voters for their approval before the measure could be implemented. (*Id.* at p. 469.) The court thus had to decide whether

the initiative process should be available for the purpose of enacting the ordinance, and decided it was not. (*Ibid.*) The proponents here are incorrect that the trial court in that case derived its power to decide the controversy between the parties from their stipulation. Rather, subject matter jurisdiction was already present in view of the authority that allows preelection challenges to determine the validity of the proposed initiative. Also, the proper parties were before the court to enable it to afford appropriate relief. (§ 389, subd. (a).)[5]

Accordingly, where the issue has been placed before the court of whether a proposal is lawful and may be placed on the ballot for the voters' consideration, the courts have the power and the duty to order that the measure is not qualified for the ballot if the measure is found to be beyond the power of the voters to enact. (*American Federation of Labor v. Eu, supra,* 36 Cal.3d at pp. 695-697; *Citizens for Responsible Behavior v. Superior Court, supra,* 1 Cal.App.4th at pp. 1021-1024.) There is no bar to naming the proponents as defendants where appropriate.

There are two additional reasons why these defendants were properly named parties in this action. First, section 8 of the proposed initiative states that these individuals shall be named as defendants in any judicial challenge to the measure, and that is what occurred. There is nothing in the proposed initiative to support the proponents' claim that this portion was only to go into effect if the proponents were successful in placing the measure on the ballot and in obtaining its approval from the voters. Rather, these defendants were properly named because they were the proponents of the measure and had the necessary interest in the subject matter to be named as parties, such that complete relief could be obtained by naming them as parties. (§ 389, subd. (a).)

Moreover, under the election procedure set forth in the SDMC, it would have been premature to name the city clerk as a defendant, because SDMC section 27.1021 only requires the city clerk to accept a petition to place an initiative on the ballot if it is in substantial compliance with the requirements for the appropriate number of signatures and format. Here, the proposed

---

[5]In another case involving an action against private proponents of a ballot measure, *Lincoln Property Co. No. 41, Inc. v. Law* (1975) 45 Cal.App.3d 230 [119 Cal.Rptr. 292], the plaintiff taxpayer initiated the lawsuit seeking to enjoin the city and its officers from conducting an unlawful referendum election (first cause of action), and to restrain certain private individuals from circulating the referendum petition and making any misrepresentations concerning the effects of the proposed resolution (second cause of action). However, the plaintiff filed a request for dismissal of the second cause of action against the individuals, and relief was only granted by the trial court against the city and its employees. (*Id.* at p. 233.) The judgment was affirmed.

initiative never got to that point, and the duties of the city clerk to process it further were never implicated, such that the city clerk would have been a necessary or appropriate party. (SDMC, § 27.1001 et seq.) Under SDMC sections 27.1002 and 27.1020, the proponents' role is to prepare the petition and then submit it to the city clerk, once the required number of signatures has been obtained. The proponents are appropriate defendants under these circumstances.

Next, the proponents complain that the City and the Padres are not proper plaintiffs in these actions, because SDMC section 27.1025 permits challenges to ballot measures to be made by voters, and the City and the Padres are not voters. This objection is meritless because a voter challenge under SDMC section 27.1025 is not the sole avenue of relief for a party who seeks to demonstrate that a proposed ballot measure is beyond the powers of the voters to adopt. Rather, such a question of law may be raised by a nonvoter seeking declaratory relief under section 1060 as to the respective rights and duties of the parties and the construction of a written instrument, where the validity of a ballot measure is concerned. (See, e.g., *Senate of the State of California v. Jones, supra,* 21 Cal.4th at p. 1153.)

The proponents have raised two more procedural issues that warrant brief discussion before we address the merits. First, on appeal, they contend the City's and the Padres' actions should be held equitably barred for unreasonable delay, because the plaintiffs took no action to challenge the proposed initiative during the three-week period after the proponents published and filed their notice of intention to present the proposed initiative to the voters. Rather, this action was brought about six weeks after the signature-gathering period began, which the proponents claim was too late. There is no valid basis for such a claim. The 20-day period after filing and publication, until signatures may be gathered, is evidently intended to give the City an opportunity to enact a similar measure, and does not constitute any deadline for bringing suit. (SDMC, § 27.1007.) This application for preelection review of the validity of the ordinance was brought with reasonable promptness, and there is no basis to bar it on terms of undue delay. Of course, at the same time, the proponents are arguing that the action was prematurely brought, and should have been delayed until after the matter was placed on the ballot and voted upon. However, there is no basis for that claim either, in view of the well-accepted availability of preelection review under these specific circumstances.

Further, it is meaningless for the proponents to point to the severability clause in the proposed initiative and to claim that the superior court should have tried harder to save any valid portions of the initiative. (Proposed

initiative, § 6; *American Federation of Labor v. Eu, supra,* 36 Cal.3d at p. 716, fn. 27.) The proponents have not pointed out how any such severability would be accomplished, nor could they, in view of the legal issues presented about the gist of the proposal, as we shall next discuss. (See *Citizens for Responsible Behavior v. Superior Court, supra,* 1 Cal.App.4th at p. 1035.)

In conclusion, none of the procedural arguments raised by the proponents amount to any successful challenge to either the SLAPP or summary judgment rulings.

## B

### *Substantive Arguments*

■ The electorate has the power to initiate legislative acts, but not administrative ones: "While it has been generally said that the reserved power of initiative and referendum accorded by article IV, section 1, of the Constitution is to be liberally construed to uphold it whenever reasonable [citations], it is established beyond dispute that the power of referendum may be invoked only with respect to matters which are strictly legislative in character [citations]. Under an unbroken line of authorities, administrative or executive acts are not within the reach of the referendum process [citations]. The plausible rationale for this rule espoused in numerous cases is that to allow the referendum or initiative to be invoked to annul or delay the executive or administrative conduct would destroy the efficient administration of the business affairs of a city or municipality [citations]." (*Lincoln Property Co. No. 41, Inc. v. Law, supra,* 45 Cal.App.3d at pp. 233-234.)

■ To decide whether a particular ballot measure constitutes a legislative or an administrative act, we must apply the test well set out and explained in *Valentine v. Town of Ross* (1974) 39 Cal.App.3d 954, 957-958 [114 Cal.Rptr. 678]: "The acts, ordinances and resolutions of a municipal governing body may, of course, be legislative in nature or they may be of an administrative or executive character. (*Hopping* v. *Council of City of Richmond,* 170 Cal. 605, 610 [150 P. 977].) . . . [¶] Also well settled is the distinction between the exercise of local legislative power, and acts of an administrative nature. [¶] Following earlier authority, we said in *Martin* v. *Smith* [(1960)] 184 Cal.App.2d 571, 575 [7 Cal.Rptr. 725]: " ' "*The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.*" ' " [Citation]; we also said (184 Cal.App.2d at p. 575): '*Acts constituting a declaration of public purpose, and making provisions for ways and means of*

*its accomplishment, may be generally classified as calling for the exercise of legislative power.* Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence.' [Citations.]" (Italics added.)

 Case law has established certain parameters for compliance with the standards for permissible legislative acts to be used in evaluating measures presented to or adopted by the voters. "It is clear that a measure may be kept off the ballot if it represents an effort to exercise a power which the electorate does not possess. [Citations.]" (*Citizens for Responsible Behavior v. Superior Court, supra,* 1 Cal.App.4th at p. 1023.) Once a legislative policy has been established, the administrative acts that follow therefrom are not subject to referendum or initiative. (*Andrews v. City of San Bernardino* (1959) 175 Cal.App.2d 459, 463 [346 P.2d 457].) They should not obstruct the project, but should carry it out. (*Ibid.*) An enactment that interferes with the City's ability to carry out its day-to-day business is not a proper subject of voter power. (*Lincoln Property Co. No. 41, Inc. v. Law, supra,* 45 Cal.App.3d at pp. 233-234.) Similarly, an enactment that would impose a straitjacket on the City to make it impossible to carry out the public business should not be allowed. (*Housing Authority v. Superior Court* (1950) 35 Cal.2d 550, 559 [219 P.2d 457].)

To apply these tests here, we must construe on their face the terms of the three documents involved: Prop. C, the MOU, and the proposed initiative that follows them, to decide de novo what was the nature of the power sought to be exercised by the voters, in accord with the language of the proposed initiative as drafted by the proponents.

The proponents' basic position is that Prop. C impliedly provides for its own termination, because Prop. C authorized the city council to amend or modify the MOU, and to carry it out according to the best interests of the City, but only if such amendments or modifications do not materially decrease the City's rights, increase the City's obligations or financial commitments, or decrease City revenue. The MOU, as authorized by Prop. C, also contains provisions allowing the City to find the required contingencies have not been met, in which case the project would not proceed.[6]

The proponents thus contend that the proposed initiative must be considered to be legislative in nature, because it decides whether the project should

---

[6]The proponents contend, without authority, that the MOU authorized by Prop. C should be considered to be an ordinance itself. However, the plain language of both Prop. C and the MOU provide that pursuant to voter approval, Prop. C authorized the City entities to enter

proceed, not how it proceeds. They further argue that it is a fundamental policy decision for the City what type of financing should fund the construction, and thus it should be a legislative decision whether the City has made an appropriate decision in that respect. Because Prop. C and the MOU created financial obligations for the City, the proponents argue that it should be a legislative decision whether to repeal those obligations, as matters of serious public interest and concern. (See *Wheelright v. County of Marin* (1970) 2 Cal.3d 448, 458 [85 Cal.Rptr. 809, 467 P.2d 537]; *Burdick v. San Diego* (1938) 29 Cal.App.2d 565, 566 [84 P.2d 1064].) Overall, they claim the proposed ordinance simply revises the public policy stated in Prop. C. For example, under the proposed initiative, a two-thirds vote of the electorate would be required to approve any revival of the project, should the proposed initiative pass and make official its findings that the required contingencies had not been met in a timely manner.

In order to evaluate these arguments, we examine the text of the relevant documents, Prop. C, the MOU, and the proposed initiative. In Prop. C, as approved by the voters, it is stated that the ordinance and the MOU it authorizes constitute the legislative acts establishing city policy on these matters, and also provide the ways and means for the implementation of the policy by such necessary and appropriate administrative and nonlegislative acts. Prop. C further authorizes the City to enter into amendments or modifications, or to carry out the necessary agreements as determined by the city council to be in the best interests of the City, subject to the criteria that the rights of the City shall not be decreased and its obligations not increased. The language of Prop. C gives the City the authority to determine its best interests by applying that criteria.

Under paragraph XXXIII of the MOU, there are a number of enumerated conditions subsequent, upon which the respective obligations of the parties, including the City, are contingent with respect to carrying out the purposes of the ordinance and the MOU. These include the City's and the redevelopment agency's ability to obtain reasonably acceptable and tax-exempt financing, and findings of feasibility of completing the necessary land acquisition, environmental approvals, and so forth. The City and its redevelopment agency are given the contractual power to waive these various conditions subsequent, and have done so with regard to some of the timing requirements. The city council's findings made on March 31, 1999,

---

into the MOU, which constitutes an agreement or contract between the parties. The MOU is thus a separate document. We also note that the proponents' reliance on the MOU, section XLII, for the concept that the project might not ever proceed is not well taken. That section is not a termination section of the MOU, but rather deals with costs for negotiations and preparation of documents.

confirmed that the deadlines could be met and no parties were in default, or any default was waived.

Turning to the proposed initiative, its section 3, subdivision (c) declares that its policy shall be established and implemented to carry out the purpose and intent of Prop. C and the MOU. The manner in which it does so is by deeming the named contingencies and conditions subsequent of Prop. C to have failed or be defeated by nonperformance. Specifically, section 2, subdivision (a) of the proposed initiative would declare that the various contingencies and conditions subsequent affecting the City's obligations "have failed, are unsatisfied, or are defeated by non-performance." The proposed initiative in section 3, subdivision (d) and section 4, subdivision (a) declares that the voters' approval of the proposal shall act as a replacement for the exercise of the discretion of the City as provided in the MOU.

In some cases, it can be difficult to distinguish between legislative proposals that both declare a public purpose, but that also make " 'provisions for ways and means of its accomplishment' " (*Valentine v. Town of Ross, supra,* 39 Cal.App.3d at pp. 957-958), and their counterpart, " 'acts of administration' " which are " 'those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body . . . .' " (*Ibid.*) We are required to make such a distinction here.

■ Clearly, Prop. C declared certain legislative policy and directed that certain events take place to implement that policy, as ways and means of carrying out the policy. The proposed initiative does not seek to change this policy by its plain language, but rather to change the substance of the implementing decisions that were created by Prop. C. In other words, the proposed initiative seeks to substitute the proponents' judgment regarding compliance with the applicable conditions and the feasibility of financing, in place of that process created by Prop. C and the MOU, which confided such implementing decisions to City administration. In so doing, the proposed initiative is an effort to administratively negate the legislative purpose of Prop. C. There is no overt statement that the Prop. C policy will be changed, but the manner in which the proposed initiative would replace City administrative discretion with voter approval places the proposed initiative firmly within the administrative category of voter enactments, which are not permitted. As such, the proposed initiative is beyond the power of the voters to adopt. Accordingly, the summary judgments were correctly granted as a matter of law on the undisputed facts shown by this record.[7]

---

[7]Because we conclude the summary judgments were properly granted on the basis that the proposed initiative was beyond the power of the voters to adopt, we need not consider the

## III

### *Conclusion*

Because we have concluded the summary judgments were appropriately granted as a matter of law, the trial court was correct in determining there was nothing left for it to decide with regard to the pending SLAPP motions made by proponents, and in taking the motions off calendar as moot. Although under section 425.16, subdivision (b)(1), the court would have been authorized to strike a cause of action that fits within the SLAPP parameters, "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," there was no longer any doubt that the plaintiffs City and the Padres were entitled to prevail on their declaratory relief causes of action. The proponents put the cart before the horse when they claim they should have been entitled to further litigate the declaratory relief matter, simply because they originally pursued their constitutional right to petition the government for redress by proposing the initiative. In this procedural context of evaluating ballot measures for validity, once a final determination has been reached regarding the subject matter of the action, a proponent's right to continue to defend the proposed ballot measure is also necessarily resolved as a question of law. It serves no legitimate purpose to permit a measure whose invalidity can be determined as a matter of law to remain on the ballot after such a ruling has been made. (See *San Francisco Forty-Niners v. Nishioka, supra,* 75 Cal.App.4th at pp. 645-648.) Finally, there was no improper interference with the proponents' First Amendment rights in the manner in which this litigation was carried out and resolved. (See *Citizens for Responsible Behavior v. Superior Court, supra,* 1 Cal.App.4th at pp. 1021-1022.)

### DISPOSITION

The summary judgments and the underlying rulings are affirmed. Appellants to pay all costs on appeal.

Kremer, P. J., and McDonald, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 25, 2001. Kennard, J., was of the opinion that the petition should be granted.

---

Padres' alternative argument that the proposed initiative would have created an unconstitutional impairment of contract, or the claim that the proposed initiative was so misleading as to amount to a misrepresentation to the voters.