Filed 2/17/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| CITY OF OXNARD, | 2d Civ. No. B314601 |
| | (Super. Ct. No. 56-2020- |
| Plaintiff and Respondent, | 00539039-CU-MC-VTA) |
| | (Ventura County) |
| v. | |
| | ORDER MODIFYING |
| AARON STARR, | OPINION AND DENYING |
| | REHEARING |
| Defendant and Appellant. | |
| | [NO CHANGE IN |
| | JUDGMENT] |


THE COURT:

It is ordered that the opinion filed herein on January 19, 2023, be modified as follows:

1. On page 13, the following sentence before the first full paragraph is deleted: "Measure M is not invalid under the exclusive delegation rule" and the following two sentences are inserted in its place: The City contends that initiatives such as Measure M violate the exclusive delegation rule by interfering with routine operations of government. It claims the Brown Act implicates two competing interests: public access to governmental

meetings and a legislative body's authority to control its own proceeding.

2. On page 13, the following paragraphs are inserted after the language in number one, and before the next section labeled: *(b) Legislative or Administrative Act*:

The Brown Act indisputably promotes public access to governmental meetings. But the City cites no provision of the Brown Act that implicates a local legislative body's interest in controlling its own proceedings as against a citizen's initiative designed to make the proceedings more open to the public. In fact, the entire purpose of the Brown Act is to limit local governmental bodies' control over their proceedings in favor of rules that make government more accessible to the public.

The City's reliance on *Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150 is misplaced. There a citizen challenged a rule of a public board limiting each speaker to three minutes on any agenda item. The court upheld the rule against constitutional and statutory challenges. *Ribakoff* is not applicable because it does not concern rules enacted through the initiative process.

Of course, the rules established by initiative must be reasonable. Although the loss of some efficiency is the price of public participation, the rules enacted by initiative cannot be so burdensome as to substantially impair the function of government. The rules in Measure M are reasonable.

Measure M sets times for meetings that allow working people to attend. It establishes a reasonable minimum of three minutes for each member of the public to speak. (See *Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th 150.) It requires that staff presentations of a meeting be recorded and made available,

2

thus allowing members of the public to have advance notice of staff rationale for its recommendations and time to prepare any comments they may have.  Finally, we are confident that the City's government will not cease to function if its meetings are subject to the discipline of Robert's Rules.

The City objects to the portion of Measure M that states, "The primary role of staff at meetings is to answer questions posed by the legislative body, not the reenactment of pre-recorded presentations."  (Measure M, § 2-1.4.) The City argues the provision limits staff presentations at meetings, leaving the background to prerecorded presentations.  The City claims that the result is that people are less informed, not more informed. But the provision speaks of staff's "primary role," not its only role.  Nothing in Measure M prohibits full staff presentations at meetings, notwithstanding prerecorded presentations.

3.  On pages 15-16, the paragraph beginning with "Finally, Starr points out…" is deleted and the following two paragraphs are inserted in its place:

Finally, Starr points to the California Constitution, article XIII C, section 3, providing, in part, "notwithstanding any other provision of this Constitution . . . the initiative power shall not be prohibited or otherwise limited in matters of reducing or repealing any local tax, assessment, fee or charge."  Starr argues Measure N falls squarely within the ambit of the constitutional provision.

But the purpose of Measure N is not to reduce or repeal a local tax.  Its purpose is to direct the expenditure of Measure O taxes.  Measure N simply uses the threat of the termination of Measure O taxes as a means of enforcement.  Starr cites no authority that the threat of repeal is the equivalent of actual

3

repeal.  If the threat of repeal were sufficient, the drafter of every initiative, no matter how administrative in nature, could insulate it from being declared void simply by appending a threat to terminate a tax if its provisions are not followed.  This would styme the effective administration of justice.

4. On page 16, in the Disposition, the sentence beginning "The judgment is reversed" is changed to begin "The order denying Starr's anti-SLAPP motion is reversed …."

This modification does not change the judgment.  Appellant Aaron Starr's and respondent City of Oxnard's petitions for rehearing are denied.

_____

Gilbert, P.J.              Yegan, J.              Baltodano, J.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX


| | |
|---|---|
| CITY OF OXNARD,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AARON STARR,<br><br>    Defendant and Appellant. | 2d Civ. No. B314601<br>(Super. Ct. No. 56-2020-<br>00539039-CU-MC-VTA)<br>(Ventura County) |


Voters pass two city initiatives. Here, we decide the city has standing to sue the proponent of the initiatives. Whether the city prevails is another matter.

An initiative that is administrative is invalid, but that is not the case with an initiative that is legislative. We also decide into what category these initiatives belong.

Here, a city sued to have two initiatives passed by the voters declared void. Measure M established procedures for the conduct of city council meetings. Measure N required the city to maintain the streets to a specified level of repair. The city named the initiatives' proponent as defendant. The proponent brought

an anti-SLAPP motion (Code Civ. Proc., § 425.16 et seq.) seeking dismissal of the suit and attorney fees. The trial court denied the motion. The proponent appeals. We reverse as to Measure M and affirm as to Measure N.

## FACTS

Aaron Starr is a resident of the City of Oxnard (the City). Starr gathered signatures for a number of initiatives, including Measures M and N. The City's voters passed both initiatives. The City brought the instant action to have the measures declared void as administrative rather than legislative in nature.

Starr responded with an anti-SLAPP motion requesting that the trial court dismiss the City's action. Starr claimed that the City is not a proper party to bring the action, that he is not a proper defendant, and that the City cannot prevail on the merits. The court denied the motion on all three grounds.

*Sunshine Ordinance*

In 2018, the City enacted a "Sunshine Ordinance." In its preamble the ordinance states, "The Sunshine Ordinance codifies the city's public policy concerning participation in the deliberations of the city's policy bodies, and clarifies and supplements the [Ralph M.] Brown Act[1]." The Sunshine Ordinance provides that the time and place for meetings of the City's legislative bodies shall be established by resolution of those bodies; specifies the time for posting meeting agendas; provides that policy body meetings shall adjourn by 10:00 p.m.; and provides for a period of public comment, but does not specify how long each member of the public can speak.

---

[1] The Ralph M. Brown Act (Gov. Code, § 54950 et seq.) is hereafter referred to as the Brown Act.

*Measure M*

Measure M modifies the Sunshine Ordinance. Measure M specifies that regular meetings of the City council shall be on the first and third Tuesday of every month; meetings shall not commence earlier than 5:00 p.m. on workdays and not earlier than 9:00 a.m. on weekends; staff presentations to the City's legislative bodies shall be videotaped in advance and posted on the City's website for viewing at the time of the posting of the agenda for the meeting; the primary role of staff at meetings is to answer questions posed by the legislative body, not the reenactment of pre-recorded presentations; each member of the public shall not have less than three minutes to comment on any agenda item at the meeting, and may comment on any item that has already been considered by a committee composed exclusively of members of the legislative body; the rules contained in "Robert's Rules of Order Newly Revised" (Robert's Rules) shall govern the City's legislative bodies and the City will use a professional parliamentarian to train the members on Robert's Rules.

*Measure N*

Measure N amends Measure O. Measure O, adopted in 2008, increased local sales and use taxes by one-half of one percent. Measure O provided that the tax increase would sunset on March 31, 2029, unless extended by the voters.

Measure N amends the sunset date of Measure O to ensure that the City spends an adequate amount to maintain the City's streets and alleys. Unless an outside civil engineer finds the pavement condition index is:

"(1) at least 65 on or before September 30, 2022, this ordinance shall expire March 31, 2023;

"(2) at least 70 on or before September 30, 2024, this ordinance shall expire March 31, 2025;

"(3) at least 75 on or before September 30, 2026, this ordinance shall expire March 31, 2027; and

"(4) at least 80 on or before September 30, 2028, this ordinance shall expire March 31, 2029."

Measure N further states: "[C]ommencing April 1, 2028, the City Council shall have the authority to extend the expiration date by twenty calendar quarters provided that between 110 and 365 days before each expiration date an outside civil engineering consultant with expertise in developing and updating pavement management systems finds that the Pavement Condition Index of the [C]ity-owned street and alley network is at least 80."

## DISCUSSION

### *ANTI-SLAPP MOTION*

Code of Civil Procedure section 425.16, subdivision (b)(1), the anti-SLAPP statute, provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

To resolve an anti-SLAPP motion, the trial court engages in a two-step inquiry. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from a protected activity. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 71.) The moving party has the burden of showing that the challenged cause of action arises from a protected activity. (*Ibid*.) Second, if the

4

moving party has carried that burden, the court must decide whether the opposing party has demonstrated a probability of prevailing on the challenged cause of action. (*Ibid*.) "The trial court's rulings on both issues are reviewed de novo." (*Ibid*.)

### Step One- Protected Activity

The City contends that its post-election lawsuit does not implicate protected activity for anti-SLAPP purposes.

To qualify as a protected activity under the anti-SLAPP statute, the lawsuit against a person must arise from an act "in furtherance of the person's right of petition or free speech . . . ." (Code Civ. Proc., § 425.16, subd. (b)(1).) The City's complaint names Starr as a defendant because "[h]e is a proponent of the two initiatives challenged here." There can be no doubt that being a proponent of an initiative is an exercise of a person's rights of petition and free speech. (See *City of Santa Monica v. Stewart, supra,* 126 Cal.App.4th at p. 73 [intervention by an initiative's sponsor in the city's lawsuit to cancel initiative an exercise of sponsor's constitutional rights of free speech and petition within meaning of anti-SLAPP statute].)

The City's reliance on *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057 is misplaced. Park brought an action against the university alleging he was unlawfully denied tenure because he was from Korea. The university responded with an anti-SLAPP motion. Our Supreme Court determined that the trial court properly denied the anti-SLAPP motion because the lawsuit arose from a denial of tenure, not an act of the university's rights of petition or free speech. Our Supreme Court stated: "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'

[Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citations.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation]" (*Id.* at p. 1063.)

Here, Starr was sued because he is a proponent of two initiatives. Being a proponent of an initiative is an activity that clearly constitutes protected speech and petitioning. Starr satisfies the requirements of Step 1.

### Step 2- Probability of Prevailing

<u>Proper Parties</u>

*(a) Proper Plaintiff*

Starr contends the City has no power to sue him to invalidate the initiatives.

A determination that a plaintiff has no probability of prevailing does not necessarily require a determination of the merits of plaintiff's claim; it may instead be based on a determination that the court lacks the power to entertain the claim. (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 326.) Starr argues that elected local representatives may not use the people's tax funds to enlist the judiciary in an attempt to overturn the will of the electorate.

But the will of the electorate as expressed through the initiative process is not plenary. There are limitations. Those limitations include the prohibition on initiatives that concern administration matters. (See *Citizens for Jobs & the Economy v. County of Orange* (2002) 94 Cal.App.4th 1311, 1332.) The City is not required to comply with an invalid initiative.

6

Code of Civil Procedure section 1060 provides in part: "Any person . . . who desires a declaration of his or her rights or duties with respect to another . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court for a declaration of his or her rights and duties . . . ." A municipality is a person within the meaning of this section. (*City of Burbank v. Burbank-Glendale-Pasadena Airport Authority* (2003) 113 Cal.App.4th 465, 480.)

Code of Civil Procedure section 1060 unequivocally gives the City standing to challenge the validity of Measures M and N. Local governments have successfully challenged the validity of an initiative in a number of cases. (See, e.g., *City of Burbank v. Burbank-Glendale-Pasadena Airport Authority*, *supra*, 113 Cal.App.4th.; *Citizens for Jobs & the Economy v. County of Orange, supra*, 94 Cal.App.4th; *City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384.) In *Totten v. Board of Supervisors* (2006) 139 Cal.App.4th 826, 833, footnote 5, we expressly rejected the contention that the county lacks standing to challenge the validity of an initiative. Starr cites no case that has held a local government lacks standing to challenge an initiative that directly affects it.

Starr's reliance on *Perry v. Brown* (2011) 52 Cal.4th 1116 (*Perry*) is misplaced. Voters of the State of California passed Proposition 8, providing that "[o]nly marriage between a man and a woman is valid or recognized in California." (*Id*. at p. 1127.) Opponents of the proposition filed an action in federal district court claiming that the proposition is unconstitutional. The suit named the California Governor and other state officials as defendants. All state officials declined to defend the suit. Official

7

proponents of Proposition 8 filed a motion to intervene. The Ninth Circuit Court of Appeals certified to the California Supreme Court the question whether the proponents had standing to intervene under California law. The California Supreme Court determined that the proponents had standing. (*Id*. at p. 1152.)

Starr cites *Perry* for his claim that once an initiative is enacted by the voters, city officials have a duty to defend the initiative. But that is not what *Perry* says. *Perry* says, "[a]lthough public officials ordinarily have the responsibility of defending a challenged law, in instances in which the challenged law has been adopted through the initiative process there is a realistic risk that the public officials may not defend the approved initiative measure 'with vigor.'" (*Perry*, *supra*, 52 Cal.4th at p. 1149, quoting *Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 822.)

Stating that public officials "ordinarily" have the responsibility of defending a challenged law, is far from holding that public officials have a duty to defend every initiative, even one they consider to be invalid on its face. *Perry* did not hold that the state officials had a duty to defend Proposition 8; it held only that proponents of the proposition have standing to intervene in a challenge to the proposition. (*Perry*, *supra*, 52 Cal.4th at p. 1152.)

### *(b) Proper Defendant*

Starr also argues that he is not a proper defendant. He believes the City is unfairly forcing him to bear the legal and financial burden of defending the initiative.

The City is not forcing Starr to bear any legal or financial burden. The City is not seeking damages against Starr; it is

8

seeking only declaratory relief.  Starr's vigorous defense of the initiatives shows that he is acting voluntarily.

Moreover, section 7 of both Measures M and N provide: "The People of the City of Oxnard declare that the proponent(s) of this measure has a direct and personal stake in defending this measure and grant formal authority to the proponent to defend this measure in any legal proceeding, either by intervening in such legal proceeding, or by defending the measure on behalf of the people and the City in the event that the City declines to defend the measure or declines to appeal an adverse judgment against the measure."

Starr proposed both measures to the citizens of the City. He can hardly complain that he is a party to the City's action to invalidate the measures when he is expressly given standing to defend them.

Even without such an express provision, proponents of an initiative have the right to intervene in an action challenging the initiative.  (*Perry*, *supra*, 52 Cal.4th at p. 1152.)  There is no reason why a proponent cannot be named as a defendant in such an action, particularly where there is no other logical defendant.

Merits

*(a) Exclusive Delegation*

The City argues that Measure M is invalid under the exclusive delegation rule.  The City contends that the initiative intrudes into a subject exclusively delegated by statute to the City council.

The seminal case on exclusive delegation is *Committee of Seven Thousand v. Superior Court* (1998) 45 Cal.3d 491 (*Committee*).  In *Committee*, Government Code section 66484.3 gives the County of Orange and the city council of any city within

9

that county the discretion to impose development fees to fund construction of major thoroughfares. The Committee of Seven Thousand proposed an initiative that would prohibit the city of Irvine, a city within Orange County, from imposing such fees without a vote of the electorate. The Court of Appeal determined that the initiative was invalid because it conflicts with state law on a matter of statewide concern. Our Supreme Court agreed.

The Supreme Court in *Committee* stated the method of analysis as follows: "Over the years this court has struggled with the question whether a statutory reference to action by a local legislative body indicates a legislative intent to preclude action on the same subject by the electorate. A review of these decisions supports the conclusion that while such references are generally not conclusive as to legislative intent, they do support an inference that the intent was to preclude action by initiative or referendum. Review of the case law further suggests that the strength of the inference varies according to the precise language used in the statute, a reference using generic language such as 'governing body' or 'legislative body' supporting a weaker inference than a specific reference to boards of supervisors and city councils. A third conclusion to be drawn is that an intent to exclude ballot measures is more readily inferred if the statute addresses a matter of statewide concern rather than a purely municipal affair." (*Committee, supra*, 45 Cal.3d at p. 501)

Not only does Government Code section 66484.3 specifically refer to city councils, but the statute addresses a matter of statewide concern. In *Committee*, the Supreme Court pointed out that Government Code section 66484.3 provides funding for "'major thoroughfares whose primary purpose is to carry through traffic and provide a network connecting to or which is a part of

the state highway system . . . .'" (*Committee*, *supra*, 45 Cal.3d 491 at p. 506, quoting Gov. Code, § 66484.3, subd. (b)(1).)

Here, the City points to Government Code section 36813, providing in part, "The [city] council may establish rules for the conduct of its proceedings." But the express reference to city council only "indicates" a legislative intent to preclude action on the same subject by the electorate." (*Committee*, *supra*, 45 Cal.3d at p. 501.) It is not determinative. We must also assess whether the statute addresses a matter of statewide concern rather than a "purely municipal affair." (*Ibid.*)

Government Code section 36813 establishes no specific rules for the conduct of City council proceedings. Instead, it leaves it to each municipality to establish its own rules. Thus, the establishment of such rules is "purely a municipal affair." (*Committee*, *supra*, 45 Cal.3d at p. 501.)

The City also relies on the Brown Act, and points to section 54952, defining "legislative body." The definition includes the governing body of a local agency and a commission, committee board, or other body of a local agency, but nowhere makes reference to the public at large.

The City ignores that generic language such as "legislative body" supports a weaker inference that the Legislature intended to preclude action by the electorate. (*Committee*, *supra*, 45 Cal.3d at p. 501.) The policy stated in the Brown Act strongly supports the conclusion that the Legislature did not intend to preclude action by the electorate.

The Brown Act provides:

"In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct

11

of the people's business.  It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.

"The people of this State do not yield their sovereignty to the agencies which serve them.  The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know.  The people insist on remaining informed so that they may retain control over the instruments they have created." (Gov. Code, § 54950)

It would be anomalous for us to conclude that the Legislature intended that the people have no control over the procedure for conducting the people's business.  Nothing in Government Code section 36813 or the Brown Act leads to that conclusion.  In fact, they lead to the conclusion that the people have such power.  It is after all the people's business.

It is true that the Brown Act sets a statewide minimum standard for public access to meetings of legislative bodies or local agencies.  But the Brown Act also provides: "Notwithstanding any other provision of law, legislative bodies of local agencies may impose requirements upon themselves which allow greater access to their meetings than prescribed by the minimal standards set forth in this chapter.  In addition thereto, an elected legislative body of a local agency may impose such requirements on those appointed legislative bodies of the local agency of which all or a majority of the members are appointed by or under the authority of the elected legislative body."  (Gov. Code, § 54953.7)

Thus standards that allow greater access are purely a municipal affair.  The provisions of Measure M are intended to

12

allow for greater access.  Measure M is not invalid under the exclusive delegation rule.

*(b) Legislative or Administrative Act*

The trial court determined that Measures M and N are invalid because they constitute administrative rather than legislative acts.  In so finding, the court relied on a long line of cases that hold the electorate has the power to initiate legislative acts, but not administrative acts.  (*City of San Diego v. Dunkl, supra*, 86 Cal.App.4th at p. 399.)  The rationale for the rule is that to allow an initiative to annul or delay executive or administrative conduct would destroy the efficient administration of the business affairs of a municipality.  (*Ibid.*)

An initiative is legislative in nature if it prescribes a new policy or plan; it is administrative in nature if it merely pursues a plan already adopted by a legislative body or some power superior to it.  (*City of San Diego v. Dunkl, supra*, 86 Cal.App.4th at p. 399)

*(b)(1) Measure M*

The difference between legislative and administrative acts is easy to say in the abstract, but it can be difficult to apply in the concrete.  In making that determination, we are guided by the long-standing judicial policy of liberally construing the initiative power whenever it is challenged so that the right may not be improperly annulled.  (*Assisted Home Builders, etc. Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591.)  If doubts can be resolved in favor of the use of the power, courts will preserve it.  (*Ibid.*)

Here, Measure M may reasonably be interpreted as legislative in nature.  It does not simply carry out a plan already adopted.  It creates new rules for the conduct of City council meetings that are reasonable.

13

The policies embodied in Measure M are endorsed by the Brown Act. In conducting the people's business, the actions of public agencies must "be taken openly and their deliberations be conducted openly" so that "the people of this State do not yield their sovereignty to the agencies which serve them." (Gov. Code, § 54950) A similar policy is enshrined in the California Constitution. (Cal. Const., art. I, § 3, subd. (b)(1), (2).) The rules stated in Measure M are intended to increase the public's ability to have information about and to participate in the decisions made by its public agencies.

### (b)(2) Measure N

Measure N amends Measure O. Measure O increased sales taxes. Measure O is a general tax; that is, its revenues are placed into the City's general fund and are available for expenditure for any and all governmental purposes. (*Howard Jarvis Taxpayers Assn. v. City of Roseville* (2003) 106 Cal.App.4th 1178, 1185.)

Measure N requires the City to expand general fund monies on road maintenance, setting specific dates and criteria for compliance. The failure of the City to comply will result in the loss of Measure O taxes.

The manifest purpose of Measure N is to ensure that Measure O revenue is expended for road repair. Measure N tells the City how it must administer general tax revenue, even setting precise dates for completion of the work. Measure N is clearly administrative in nature.

Starr argues that Measure N says nothing about how the City must spend Measure O tax receipts. But Starr admits that "Measure N . . . was born out of the voters' frustration that City officials had not kept their promises and had not been wisely

14

spending the funds the City was receiving from Measure O . . . ."
The preamble to Measure N itself says as much, and specifies
lack of performance in maintenance of the City's streets.
Although Measure N says nothing about how the City must
spend Measure O tax receipts, its purpose and effect is to do just
that.

Starr also argues that Measure N says nothing about how
the City may achieve the specified pavement condition levels.
Starr posits the City may do such things as spend non-Measure O
funds, seek grants, or borrow money.

But Measure N is tied to Measure O funds. The preamble
to Measure N mentions only Measure O funds as being
improperly spent and holds only Measure O funds hostage to
what Starr considers the proper administration of street
maintenance. The purpose and intent of Measure N is to
determine how Measure O funds should be spent. Determining
how Measure O funds should be spent is administrative in
nature. It is beside the point that other methods of funding may
be available.

Starr argues the City may choose to not maintain the
streets to the level required by Measure N and allow Measure O
taxes to sunset. But an administrative initiative does not become
any less administrative because its provisions are attached to an
ultimatum.

Finally, Starr points out that a properly constructed
initiative could cancel Measure O entirely before its sunset date.
(Citing *Rossi v. Brown* (1995) 9 Cal.4th 688, 693 ["[T]he initiative
power may be used to prospectively repeal a tax ordinance"].)
But that is not what Measure N does. It attempts to control

15

Measure O funds, not terminate the tax.  We do not consider what the measure might have done, but did not do.

## DISPOSITION

The judgment is reversed as to Measure M and affirmed as to Measure N.  Both parties are to bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

16

Henry J. Walsh, Judge

Superior Court County of Ventura

_____


Strumwasser & Woocher, Fredric D. Woocher, Beverly Grossman Palmer; California Anti-SLAPP Project and Mark Goldowitz for Defendant and Appellant.

Jonathan M. Coupal, Timothy A. Bittle and Laura E. Dougherty for Howard Jarvis Taxpayers Foundation as Amicus Curiae on behalf of Defendant and Appellant.

Colantuono, Highsmith & Whatley, Holly O. Whatley, Jon R. di Cristina, for Plaintiff and Respondent.

Best Best & Krieger, Gregg W. Kettles, Avi W. Rutschman for League of California Cities as Amicus Curiae on behalf of Plaintiff and Respondent.

17